IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**WILLIE ST. VICTOR,**
**ALIEN # A77-846-716,**

     Petitioner,

vs.                                Case No. 4:08cv185-SPM/WCS

**MICHAEL B. MUKASEY, et al.,**

     Respondents.

_____/


## REPORT AND RECOMMENDATION

Petitioner, proceeding *pro se*, initiated this case on April 22, 2008, doc. 1, with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondents filed an Answer to the petition. Doc. 14. Petitioner replied. Doc. 16.

**Allegations of the § 2241 petition, doc. 1**

Petitioner alleges that he has been held in detention by the Department of Homeland Security for more than six months while awaiting removal to his native country, the Bahamas. Doc. 1. Petitioner states that he was born on March 10, 1985, and was ordered removed on April 9, 2007. *Id.*, p. 4. Petitioner challenges his

continued detention.  Petitioner argues that Respondents are unable to remove him, yet refuse to release him.  Petitioner seeks release from detention.  *Id.*

**Whether this petition is moot**

As will be explained ahead, there was a "tentative" plan to remove Petitioner to Haiti on August 27, 2008.  My law clerk called the Hernando County Jail on October 8, 2008, and was told that Petitioner still is in detention there.  The petition is not moot.

**The Answer, doc. 14**

Respondents contend that Petitioner fails to "demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future."  Doc. 14, p. 2.  In particular, Respondents assert that although Petitioner has been held more than six months, Petitioner has dual nationality in both the Bahamas and Haiti.  *Id.*, at 5.  Respondents contend that Petitioner fails to address any attempts to remove him to Haiti.  *Id.*  Thus, Respondents contend that Petitioner has not shown that his removal is not reasonably foreseeable, and request the petition be dismissed.  *Id.*, at 7.

Petitioner was served with an I-913 form on July 29, 2008, just the day before the Answer was filed, advising him that "ICE would now remove him to Haiti."  Doc. 14, p. 5.  Petitioner was "tentatively scheduled for a removal flight back to Haiti on August 27, 2008."  *Id.*, at 6.

An affidavit attached to the Answer states that Petitioner "was born in the Bahamas and is a citizen of Haiti."  Doc. 14-2.  It is not known when or where Petitioner entered the United States.  *Id.*  Petitioner was ordered removed to the Bahamas by an Immigration Judge on April 9, 2007.  *Id.*  Petitioner did not appeal the order of removal.  *Id.*  At that time, Petitioner "was serving a state criminal sentence (1 year, 4 months, &

12 days) for violations of Florida law and was not released into ICE custody." *Id.* Petitioner was taken into ICE custody from the Florida Department of Corrections on October 16, 2007. *Id.*

Petitioner remained in ICE custody at the Wakulla County Jail until June 30, 2008, when he was transferred to the Hernando County Jail. *Id.* Petitioner was detained at that Jail at the time the Answer was filed on July 30, 2008, and Petitioner remains there at present. *Id.*

The affidavit by Mark Annotti, a Deportation Officer with Immigration and Customs Enforcement (ICE), acknowledges that the government of the Bahamas, the country of Petitioner's birth, refused to issue a travel document for Petitioner. *Id.* Mr. Annotti acknowledges having "encountered difficulty due" to the Bahamian government declining to issue travel documents, but states that "ICE is now attempting to remove the [P]etitioner to his country of citizenship, Haiti." *Id.*

It was not until July 24, 2008, however, that headquarters "notified the local office that removal to Bahamas [was] no longer foreseeable." Doc. 14-2. Thereafter, on July 29, 2008, Petitioner was served with an I-913 notice from ICE that it intended to remove Petitioner to Haiti. *Id.* Mr. Annotti further declares that "petitioner has been tentatively scheduled to depart the United States on a scheduled JPATS flight for haiti on 08/27/2008." *Id.* As noted above, this removal did not take place because Petitioner is still in detention yesterday.

**Petitioner's Reply, doc. 16**

Petitioner has responded and argues that both the Bahamas and Haiti have "denied travel documents to the petitioner and are not willing to accept him." Doc. 16,

p. 2.  Petitioner points out that in the Annotti affidavit, doc. 14-2, ICE submitted a travel document request to Haiti on January 24, 2008.  Doc. 16, p. 2.  There has been no indication that Haiti will approve Petitioner's removal or that the Haitian government is sending travel documents for Petitioner.  *Id.*  It is undisputed that removal to the Bahamas is not foreseeable.  *Id.,* at 3; *see also* doc. 14-2, p. 10.

Petitioner provided his own affidavit in which he provides background information, pointing out that ICE attempted to put him on a flight to Haiti on February 25, 2008.  *Id.,* at 7.  Petitioner states that he was "taken to the airport" but then ICE sent him back to Tensas Parish, in the New Orleans District.  *Id.*  The reason given to Petitioner was that "the Haitian government wanted contact information of a family member that were going to pick all Haitian Bahamian up in Haiti after removal [sic]."  *Id.*  Petitioner stated:

> The ICE agent said that he was not going to waste his time to put all the Haitian Bahamians on the JPATS because the Haitian government was going to send them right back since we do not have family in Haiti.

Doc. 16, p. 7.

Petitioner contends that neither Haiti nor the Bahamas will accept him.  Doc. 16, p. 4.  Since no response has been received to the request from ICE to Haiti since January 24, 2008, Petitioner contends that ICE has tried and failed to remove him to Haiti.  *Id.*

**Analysis**

Habeas corpus proceedings under § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention."  <u>Zadvydas v. Davis</u>, 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  Although this Court

cannot invalidate the order of removal, this Court does have subject matter jurisdiction to entertain Petitioner's challenge to his post-removal-period of detention.

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).  During the "removal period" an alien must be detained. 8 U.S.C. § 1231(a)(2).  After the removal period, the government may detain the alien or release him subject to conditions of release.  8 U.S.C. § 1231(a)(6).

In <u>Zadvydas v. Davis</u>, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the United States Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and was called upon to decide whether the statute authorized indefinite detention of a removable alien.  The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States."  *Id.*, at 689, 121 S. Ct. at 2498.  The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.,* at 699, 121 S.Ct. at 2503.  For the sake of uniform administration by the federal courts, the <u>Zadvydas</u> Court held that "the presumptive period during which the detention of an alien is reasonably necessary to

effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' "  Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. Petitioner in this case seeks conditional release and has claimed it is not likely that ICE can remove him.  Doc. 1.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[1]  The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien.  Clark, 543 U.S. at 386, 125 S.Ct. at 727.  Thus, it held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable.  *Id.*  The combination of opinions from Clark and Zadvydas controls this case: an alien cannot be detained indefinitely and when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005)(relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

---

[1] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

<u>Zadvydas</u> established a burden-shifting analysis to review these claims. After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Zadvydas</u>, 533 U.S. at 701, 121 S.Ct. at 2505. Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Id.* The Court also noted:

> And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*, at 701, 121 S.Ct. at 2505.

Here, Petitioner made a *prima facie* showing in his § 2241 petition when he alleged that he had been held in detention since October 16, 2007, a period of just over six months when the petition was filed on April 22, 2008. Doc. 1. At this point, Petitioner's detention is nearly one year. Petitioner also adequately alleged that he made several efforts to assist in his removal (contacting the consulate and providing requested documents to ICE officials), but never received a response from the Bahamian Consulate. Doc. 1, p. 4. Petitioner stated in the petition that it was "unlikely" that he would "be removed in the reasonable [sic] foreseeable future." *Id.* Petitioner further alleged that based on his efforts and "the length of Petitioner's administrative detention, the United States government is unlikely to be able to effect his deportation in the reasonably foreseeable future." *Id.*, at 5. These allegations adequately demonstrate that Petitioner made the necessary *prima facie* showing.

Thus, the burden shifted to the Government to show that Petitioner's removal is foreseeable and can be carried out within a reasonable period of time.  Respondents do not make that showing, arguing instead that Petitioner "provided no evidence to show 'that there is no significant likelihood of removal in the reasonably foreseeable future.' " Doc. 14, p. 5, *citing* Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).  Yet Petitioner did make that showing, alleging that the Government will not be able to remove him.  That is all that is required to make a *prima facie* case.

Petitioner now points to Respondents' evidence to show that the Government of the Bahamas has refused to issue travel documents for Petitioner.  After receiving notice from the Bahamas, and three months *after* Petitioner initiated this case, Respondents changed plans and began attempts to remove Petitioner to Haiti.  That change does not provide a basis for believing that Respondents will be able to remove Petitioner to Haiti, especially considering Petitioner's affidavit in which he noted that the Government declined to remove him to Haiti in February, 2008, thinking that such removal would be futile.  Having already noted that Petitioner could not be accepted into Haiti because Petitioner did not have family in Haiti, there is no reason to believe that Petitioner will be removed there in the reasonably foreseeable future.  Respondents have not met their burden in this case.

Where removal is not foreseeable, then continued detention is unreasonable, is not authorized by statute, and is not constitutionally permissible.  *See* Zadvydas, 533 U.S. at 690 and 699-700, 121 S.Ct. at 2499 and 2504.  The relevant statute provides that if an alien "is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8

Page 9 of 10

U.S.C. § 1231(a)(3).  Such regulations are to require the alien to: "(A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien."  8 U.S.C. § 1231(a)(3).  Inadmissible or criminal aliens must be subject to terms of supervision.  8 U.S.C. § 1231(a)(6).

Accordingly, because the Government has not shown that Petitioner will be removed in the reasonably foreseeable future, and because his continued detention is no longer authorized by statute nor permitted by the Due Process Clause of the United States Constitution, the petition should be granted.  Respondents should release Petitioner from custody under such terms and conditions deemed necessary to ensure Respondents are informed of Petitioner's whereabouts pending his removal and in compliance with the requirements of § 1231(a)(3).

In light of the foregoing, it is respectfully **RECOMMENDED** that Petitioner Willie St. Victor's petition for a writ of habeas corpus, doc. 1, filed pursuant to 28 U.S.C. § 2241 be **GRANTED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 9, 2008.

 s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**